**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
_____

| | |
|---|---|
| **DAMIAN MENDEZ,** | CIVIL ACTION |
| **JOSE ANTONIO MARTINEZ JIMENEZ,** | |
| **and CRISTIAN TAVERAS** | |
| On behalf of themselves and all | |
| other similarly situated persons, | Case No. 3:20-cv-00896 |
| | |
| Plaintiffs, | |
| v. | |
| | |
| **NEHDS LOGISTICS, INC.,** | |
| **ABC CORPS., and JANE & JOHN DOES,** | |
| | **CLASS ACTION COMPLAINT** |
| Defendants. | **AND JURY TRIAL DEMAND** |

_____

## PLAINTIFFS' CLASS ACTION COMPLAINT

1.    NOW COME the Plaintiffs, DAMIAN MENDEZ, JOSE ANTONIO MARTINEZ
JIMENEZ, and CRISTIAN TAVERAS, by and through their attorneys at Grady & Riley, LLP,
and in their Complaint bring this civil action pursuant to **Racketeer Influenced and Corrupt
Organizations Act** (hereinafter "RICO"), **18 U.S.C. 1961 et seq**., on their own behalf and on
behalf of a class of individuals who were similarly injured by Defendants' violations of the
RICO Act.  Plaintiffs complain that the Defendants NEHDS Logistics, Inc., ABC Corps., and
John and Jane Does (collectively, hereinafter "Racketeer Defendants") operated a **criminal
enterprise** engaged in a pattern of racketeering activity, including Wire Fraud and Mail Fraud,
involving numerous RICO predicate acts, all based on intentional misclassification of employees
as independent contractors as a means of:

   (1)    defrauding the State and federal tax authorities (the "**TAX EVASION
          SCHEME"**)

   (2)    defrauding Plaintiffs and the members of the class of their wages (the "**WAGE
          THEFT SCHEME"**) and

   (3)    defrauding their workers' compensation insurance carrier(s) (the "**WORKERS'
          COMPENSATION INSURANCE SCHEME"**).

Racketeer Defendants systematically and continuously, over the last ten (10) years or more, have
conducted a corrupt enterprise in violation of the RICO Act, all acts of which are continuing in
nature.  Defendant NEHDS Logistics, Inc intentionally and with full knowledge of the actions
and their natural consequences, willingly conspired with Defendants ABC Corps, and
Defendants Jane and John Does to participate in and/or further the criminal enterprise. Plaintiffs

and Members of the Class were injured as a result of the Racketeer Defendants' various schemes to defraud. Plaintiffs seek a declaration that their rights as well as those of the class, have been violated and that they and members of the class be awarded damages for Defendants' unlawful conduct.

2.     The wrongful conduct of Racketeer Defendants also gives rise to a claim by Plaintiffs (and other similarly situated persons) for damages under the **Fair Labor Standards Act (29 U.S.C. § 216), the Connecticut Wage and Hour Act (Conn. Gen. Stat. § 31-58, et seq.) ("the WHA"),** and the common law doctrine of unjust enrichment.

3.     While it is established precedent that the FLSA is the sole remedy for federal minimum-wage and overtime violations. However, the FLSA does not preclude suits for other damages, such as those available under RICO, even when the underlying conduct also violates the FLSA. Such other damages are more fully set forth below, specifically in paragraphs 130, 141, and 152. While this action would seem to constitute a case of first impression within the Second Circuit, Plaintiffs believe that the recent opinion of the Sixth Circuit in Torres v. Vitale, 954 F.3d 866 (decided March 31, 2020) (Rehearing denied by Torres v. Vitale, 2020 U.S. App. LEXIS 13471 (6th Cir., Apr. 24, 2020)), is persuasive authority in this matter.

## JURISDICTION AND VENUE

4.     Jurisdiction is also proper because this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1964(a) (RICO) and pursuant to 28 U.S.C. § 1331 because this action arises under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1332(d).

5.     Venue is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. Plaintiffs and Class Members showed up for work at the same NEHDS Logistics, Inc. headquarters in Monroe, Connecticut[1] every day, made a substantial number of deliveries within Connecticut, and returned to the same Monroe, Connecticut location[2] every night after completing deliveries.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

## THE PARTIES

7.     Plaintiff DAMIAN MENDEZ is a resident of Danbury, Connecticut.

8.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ is a resident of Danbury, Connecticut.

9.     Plaintiff CRISTIAN TAVERAS is a resident of Danbury, Connecticut.

---

[1] Or prior to the NEHDS relocation to Monroe, Connecticut, to the previous NEHDS headquarters in Bethel, Connecticut.

[2] See footnote No. 1

10.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of all similarly situated current and former employees of Racketeer Defendants who are or were employed at any time in the last four (4) years. Plaintiffs propose the following class definition:

> ***All current and former deliverymen or deliverywomen employed by NEHDS Logistics, Inc. and/or ABC Corps. and/or John and Jane Does.***

Plaintiffs reserve the right to amend the putative class definition if necessary.

11.    Defendant NEHDS Logistics, Inc. ("NEHDS") is a Connecticut delivery company that maintains and operates a headquarters at 448 Pepper Street, Monroe, Connecticut 06468.[3]

12.    Defendant NEHDS is a provider of delivery and logistics services for various companies.

13.    Defendant NEHDS was at all relevant times herein, an employer of Plaintiffs and certain other similarly situated employees, as defined by the FLSA and the WHA.

14.    Defendants ABC CORPS. and/or JANE and JOHN DOES are joint employers of the remaining other similarly situated employees, as defined by the FLSA and WHA, which entered into agreements to provide deliverymen or deliverywomen (hereinafter, "deliverymen") for or with Defendant NEHDS.

15.    At all times relevant to this action, Racketeer Defendants were Plaintiffs' employers as defined by 29 U.S.C. § 203(d) and Conn. Gen. Stat. § 31-275(10), and Racketeer Defendants jointly employed Plaintiffs.

16.    Defendant NEHDS Logistics, Inc. maintained a warehouse at 448 Pepper Street, Monroe, Connecticut 06468[4] which stored its own vehicles and vehicles belonging to ABC CORPS. and/or JANE and JOHN DOES, all of which were used interchangeably to deliver goods on behalf of and for the benefit of NEHDS.

## GENERAL ALLEGATIONS

17.    Plaintiffs and all Class Members were assigned to perform non-exempt tasks for NEHDS and were based out of the NEHDS Facility in Monroe, Connecticut, or before the NEHDS relocation, Bethel, Connecticut.

18.    NEHDS entered into business relationships with other entities, including ABC Corps., and JANE and JOHN DOES, in order to conceal the fact that it had an employer-employee relationship with Plaintiffs and all Class Members.

---

[3] And at 6B Research Dr, Bethel, CT 06801 before said headquarters was relocated to Monroe.
[4] Id.

19.    NEHDS is a delivery and logistics company who controlled the manner and the means in which Plaintiffs and all Class Members performed their duties.  Specifically, Plaintiffs and all Class Members were expected to report to work every morning at the NEHDS facility in Monroe, Connecticut[5], at or about 6:00AM without being specifically asked, took instruction from NEHDS employees, communicated with NEHDS employees while delivering their routes during the workday, and handled paperwork related to or pertaining to NEHDS.  NEHDS had the authority to reprimand and/or terminate Plaintiffs and all Class Members.  As such, NEHDS was an employer of Plaintiffs and all other Class Members under the FLSA and the WHA.

20.    ABC Corps. and/or JANE and JOHN DOES entered into agreements with NEHDS to provide deliverymen to work out of the NEHDS facility, delivering goods as instructed by NEHDS, for the benefit of NEHDS, for the purpose of providing service on behalf of NEHDS to NEHDS clients, or directly to NEHDS customers.

21.    ABC Corps. and/or JANE and JOHN DOES are employers under the FLSA and WHA because they controlled aspects of the employment of Plaintiffs and all other Class Members.

22.    Plaintiffs and Class Members are not independent contractors as defined by Conn. Gen. Stat. §31-222 (a.k.a. "the ABC Test").

23.    Plaintiffs and Class members are not exempt under the FLSA.

24.    Plaintiffs and Class members are not exempt under the WHA.

25.    Plaintiffs and Class Members routinely worked far in excess of forty (40) hours per week for Defendants and were not paid 1.5 times their hourly rate when they worked over forty (40) hours per week.

26.    Racketeer Defendants' ongoing illegal policies of failing to pay Plaintiffs and Class Members for time worked has resulted in Class Members being denied substantial legally required compensation and/or overtime payments given that Class Members routinely worked in excess of forty (40) hours per week.

27.    In addition, the payments earned by Plaintiffs and Class Members are reduced to account for various deductions, charges and/or expenses that do not benefit Plaintiffs or other Class Members.  For example, Plaintiffs, like other Class Members, were subjected to deductions, charges and/or expenses to cover, inter alia, performance-based penalties.

28.    Plaintiffs and all other Class Members were actively misled by the Racketeer Defendants about their rights and obligations under the law as it affected them, and they relied on Racketeer Defendants' fraudulent misrepresentations, to their detriment.

---

[5] Id.

## WAGE THEFT SCHEME

29.     Plaintiff DAMIAN MENDEZ was employed by the Defendants from about October 2019 to about March 2020.

30.     Plaintiff DAMIAN MENDEZ worked approximately seventy (70) hours or more per week for Defendants from about October 2019 to about March 2020.

31.     Plaintiff DAMIAN MENDEZ was paid weekly by Defendants at a rate of $140.00 per day from about October 2019 to about March 2020.

32.     Although Plaintiff DAMIAN MENDEZ worked approximately seventy (70) hours or more per week during his employment for Defendants, Defendants did not pay Plaintiff time and a half (1.5 times) his regular hourly wage for hours worked over forty (40) hours, a violation of the overtime provisions contained in the FLSA and the WHA.

33.     By misclassifying Plaintiff DAMIAN MENDEZ as an independent contractor when he was in fact an employee under Connecticut law, in certain weeks where Plaintiff was above a certain threshold of hours worked, his weekly pay amounted to less than the Connecticut Minimum Wage, in violation of the WHA.

34.     Plaintiff DAMIAN MENDEZ left his employment in March 2020 due to his dissatisfaction with the Defendants' repeated, ongoing abuses of federal and State Wage and Hour laws, despite complaints voiced by him and other deliverymen.

35.     Plaintiff DAMIAN MENDEZ would have been eligible to receive unemployment compensation insurance benefits upon leaving employment, because his decision to quit is considered "good cause" under Connecticut law because Defendants failed to pay him lawfully owed wages in violation of the FLSA and WHA

36.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ was employed by the Defendants continuously for over 4 years, commencing employment prior to June 2016 until the conclusion of his employment in March 2020.

37.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ worked approximately seventy (70) hours or more per week for Defendants beginning prior to June 2016 to about March 2020.

38.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ was paid by Defendants approximately $140.00 per day beginning prior to June 2016 to about March 2020.

39.     Although Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ worked approximately seventy (70) hours or more per week during his employment for Defendants, Defendants did not pay Plaintiff time and a half (1.5 times) his regular hourly wage for hours worked over forty (40) hours, a violation of the overtime provisions contained in the FLSA and the WHA.

40.    By misclassifying Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ as an independent contractor when he was in fact an employee under Connecticut law, in certain weeks where Plaintiff was above a certain threshold of hours worked, his weekly pay amounted to less than the Connecticut Minimum Wage, in violation of the WHA.

41.    Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ left his employment in March 2020 due to his dissatisfaction with the Defendants' repeated, ongoing abuses of federal and State Wage and Hour laws, despite complaints voiced by him and other deliverymen.

42.    Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ would have been eligible to receive unemployment compensation insurance benefits upon leaving employment, because his decision to quit is considered "good cause" under Connecticut law because Defendants failed to pay him lawfully owed wages in violation of the FLSA and WHA.

43.    Plaintiff CRISTIAN TAVERAS was employed by the Defendants from about March 2018 to about December 2019.

44.    Plaintiff CRISTIAN TAVERAS worked approximately seventy (70) hours or more per week for Defendants from about March 2018 to about December 2019.

45.    Plaintiff CRISTIAN TAVERAS was paid weekly by Defendants in cash at a rate of $125.00 per day from about March 2018 to about December 2019.

46.    Although Plaintiff CRISTIAN TAVERAS worked approximately seventy (70) hours or more per week during his employment for Defendants, Defendants did not pay Plaintiff time and a half (1.5 times) his regular hourly wage for hours worked over forty (40) hours, a violation of the overtime provisions contained in the FLSA and the WHA.

47.    By misclassifying Plaintiff CRISTIAN TAVERAS as an independent contractor when he was in fact an employee under Connecticut law, in certain weeks where Plaintiff was above a certain threshold of hours worked, his weekly pay amounted to less than the Connecticut Minimum Wage, in violation of the WHA.

48.    Plaintiff CRISTIAN TAVERAS left his employment in December 2019 due to his dissatisfaction with the Defendants' repeated, ongoing abuses of federal and State Wage and Hour laws, despite complaints voiced by him and other deliverymen.

49.    Plaintiff CRISTIAN TAVERAS would have been eligible to receive unemployment compensation insurance benefits upon leaving employment, because his decision to quit is considered "good cause" under Connecticut law because Defendants failed to pay him lawfully owed wages in violation of the FLSA and WHA.

50.    Plaintiffs and Class Members were paid a daily flat rate regardless of how many hours they worked, and regardless of whether their total weekly hours worked exceeded forty (40) hours.

51.     Defendants also improperly shifted expenses onto the Plaintiffs by requiring Plaintiffs to pay for uniforms to be worn while making deliveries.  The uniforms were sold from an in-house store at the NEHDS facility in Monroe, Connecticut where the deliverymen reported every morning, and prior to said facility's 2019 relocation, in Bethel, Connecticut.

52.     Racketeer Defendants also improperly shifted expenses onto the Plaintiffs by sometimes requiring Plaintiffs to pay the cost for any furniture damaged during the course of deliveries.

53.     Upon information and belief Racketeer Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by both the FLSA and WHA.

54.     Racketeer Defendants intentional misclassification of deliverymen was for the purpose of circumventing their obligations to pay overtime under the FLSA, as well as their obligations under the various tax codes, as will be set forth below.

55.     Racketeer Defendants failed to properly pay the Plaintiff and the Class Members required overtime compensation in order to realize a financial gain through the Wage Theft Scheme and their various other schemes set forth below.

## TAX EVASION SCHEME

56.     Racketeer Defendants devised a scheme, hereinafter known as the "Tax Evasion Scheme," with the goal of defrauding the State and federal tax authorities in order to avoid paying the requisite tax withholdings.

57.     Racketeer Defendants developed more than one method with which to carry out their scheme and continued to carry out this scheme through the filing of this Complaint.

58.     Racketeer Defendants benefitted from and continue to benefit from the Tax Evasion Scheme by realizing more profits than what they would have without the Tax Evasion Scheme, using various methods more fully set forth below.

59.     Because Racketeer Defendants intentionally misclassified Plaintiffs and Class Members as independent contractors, Plaintiffs and Class Members were wrongfully subjected to a Social Security and Medicare tax liability of 15.3% on their earnings (as "self-employed" individuals), whereas if they had been properly classified as employees, they would have only had a 7.65% tax liability.

60.     Racketeer Defendants' nonpayment of withholdings also lessened Plaintiffs and Class Members' future Social Security benefits.

61.     Racketeer Defendants' also deliberately misrepresented to the Connecticut Department of Labor that the Plaintiffs and Class Members were independent contractors in order to pay lower unemployment insurance contributions than they would have otherwise paid if Plaintiffs and Class Members had been properly categorized as employees.

62.     Racketeer Defendants' routinely wrote out weekly paychecks to Plaintiffs made payable to "Cash" for the purpose of defrauding the tax authorities and making the payment of wages to their employees more difficult for the tax authorities to track.

63.     Racketeer Defendants' routinely paid Plaintiffs in cash for the purpose of defrauding the tax authorities and making the payment of wages to its employees more difficult for the tax authorities to track.

64.     By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Racketeer Defendants committed wire and/or mail fraud to further their scheme as follows:

(a)     Racketeer Defendants were required to submit a UC2/UC-5A Employer Contribution Return /Employee Quarterly Earnings Report to the State of Connecticut quarterly every year pursuant to 29 U.S.C. § 49(c) (incorporated in State law as Conn. Gen. Stat. 31-225a(j)).  These communications are due each year on April 30, July 31, October 31, and January 31. On these tax forms filed via the Connecticut Department of Labor website or via U.S. Mail, Racketeer Defendants would file a statement with the total amount of wages earned from all employees that formed the basis of calculating Racketeer Defendants' unemployment tax.  The numbers on these forms were <u>substantially</u> lower than they would have been if Racketeer Defendants had not conspired to intentionally misclassify Plaintiffs and Class Members in furtherance of their Tax Evasion Scheme.  Racketeer Defendants fraudulent misrepresentation of wage figures was meant to defraud the State of Connecticut of rightly owed tax revenue, and to lessen Racketeer Defendants' tax burden.  Racketeer Defendants would thus commit four (4) instances of wire and/or mail fraud per year per class member.

(b)     Racketeer Defendants were required to submit a Federal 941 form pursuant to 26 U.S.C. § 6011 et seq. Employers are required to make contributions in the amount of 6.2% of total wages paid to employees pursuant to 26 U.S.C. § 3111(a) and 1.45% of total wages paid to employees pursuant to 26 U.S.C. § 3111(b). These documents were communicated to the IRS and contained, inter alia, a report of the number of all employees employed by the Racketeer Defendants and total wages paid to the same.  These documents were used to ascertain, based on total wages, what amount of money Racketeer Defendants needed to contribute to the IRS. These documents were filed with the IRS quarterly. These documents were either mailed using the U.S Postal Service or filed electronically.  Each time this document was communicated with the incorrect / fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud.  Racketeer Defendants would commit four (4) instances of wire fraud per year per class member.

(c)     Racketeer Defendants were required to submit a CT-941 form pursuant to Conn. Gen. Stat. § 12-707 and Regs. Conn. State Agencies §12-707-1. Employers are

required to file Form CT-941 even if no tax is due or if no tax was required to be withheld. These documents were communicated to the Connecticut Department of Revenue Services ("DRS") and contained, inter alia, a report of the total wages paid to employees by Racketeer Defendants. These documents were filed with the DRS quarterly. These documents were either mailed using the U.S Postal Service or filed electronically. Each time this document was communicated with the incorrect / fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud. Racketeer Defendants would commit four (4) instances of wire fraud per year per class member.

## WORKERS COMPENSATION INSURANCE SCHEME

65.    Racketeer Defendants devised a scheme, hereinafter known as the "Workers' Compensation Insurance Scheme", with the intended goal of defrauding their Workers' Compensation insurance carrier(s) by submitting fraudulent wage amounts to their carrier(s) which were then relied upon and used to calculate their insurance premiums.

66.    Racketeer Defendants benefitted from the Workers' Compensation Insurance Scheme by realizing more profits than what they would have without the scheme as follows:

    (a)    They were able to falsely report to their Workers' Compensation insurance carrier both the number of employees and total wages paid to employees, in order to reduce their insurance premiums.

    (b)    They routinely threatened deliverymen with termination if they filed a Workers' Compensation claim or reported to medical providers that an injury happened at work, thereby depriving the deliverymen of medical care that should have otherwise been fully compensated, as well as other benefits, in order to increase their profits.

67.    The threats to the deliverymen that they should not file a Workers' Compensation claim or report to medical providers that injuries occurred at work proves that the misclassification of the deliverymen was not merely an inadvertent mistake, but rather a knowing, willful, and deliberate attempt to defraud their insurance carriers, their employees, and State and federal tax authorities.

68.    Plaintiffs and the Class Members were harmed by the natural and obvious consequences of implementing and furthering the Workers Compensation Insurance Scheme.

69.    By reporting the fraudulent wage amounts to their insurance carriers, Racketeer Defendants used an interstate wire communication and/or mail fraud to further the Workers' Compensation Insurance Scheme.

70.     As a result of Racketeer Defendants' scheme, Plaintiffs and Class Members each were harmed by the Racketeer Defendants' failure to report their full wages paid by failing to properly report them as employees.

71.     Racketeer Defendants' nonpayment of proper workers' compensation premiums and/or benefits also lessened Plaintiffs and Class Members' future social security benefits.

## RICO ENTERPRISE

72.     Plaintiffs reallege and incorporate herein all previous paragraphs.

73.     Each named Plaintiff and each Class Member is a "person" as within the meaning of 18 U.S.C. § 1964(c).

74.     Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1964(c).

75.     NEHDS Logistics, Inc., ABC Corps., and JANE and JOHN DOES are and/or were an association-in-fact "enterprise" ("the Enterprise") as the term is defined in 18 U.S.C. § 1961(4).

76.     The legal entities were used for illegal purposes by the unofficial, corrupt "Enterprise".

77.     The Racketeer Defendants carried out their various schemes through this Enterprise.

78.     Although all Racketeer Defendants participated in the Enterprise and were a part of it, they each also have an existence separate and distinct from the Enterprise.

79.     The common purpose of the Enterprise was to defraud money from the state and federal tax authorities, Plaintiffs and Class Members, as well as the Workers' Compensation insurance carriers in order to realize a greater financial benefit for the Racketeer Defendants.

80.     Through the criminal fraud schemes described above, the Racketeer Defendants knowingly, and with specific intent to defraud and realize a profit through that fraud, operated and managed the Enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

81.     Defendant NEHDS actively participated in implementing the schemes and therefore conspired with Defendant ABC CORPS. in order to further the schemes described above in violation of RICO, 18 U.S.C. § 1962(d).

82.     This pattern of illegal activities committed by the Racketeer Defendants, the "Predicate Acts," set forth below, was done with the purpose of financial gain/benefit and were done within the past ten (10) years and are continuing.

83.     By the acts alleged herein, Racketeer Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the law, through their ongoing criminal Enterprise as set forth below.

84.     The Defendants each intended the natural and obvious results of their actions.

## PREDICATE RACKETEERING ACTS

85.     Plaintiffs reallege and incorporate herein all previous paragraphs.

86.     In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully deliberately misclassified their employees as independent contractors.

87.     In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully frequently paid employees in cash, for any or all of the following purposes, among others:

      (a)     to evade payment of State and federal income and employment taxes;

      (c)     to circumvent bookkeeping and recordkeeping requirements of the State and federal tax authorities

      (c)     to conceal their crimes such that there would be no incriminating written record of their ongoing and repeated violations of the tax laws and the applicable wage and overtime laws in the event that Defendants were investigated by the State or federal authorities and/or subjected to lawsuits initiated by parties who were damaged by Defendants' criminal acts, such as this Complaint brought by the Plaintiffs and Class Members.

88.     In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully committed the aforementioned predicate racketeering offenses of Mail and Wire fraud under RICO more fully set forth below.

89.     The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding the tax authorities, the Plaintiffs and Class members, and their insurance carriers, for the purpose of increasing their profits.

90.     Upon information and belief, these schemes have actually been ongoing for more than 10 years.

### *Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341*

91.     The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and such violations are each potentially punishable by more than one year in jail constituting mail fraud.

92.     Racketeer Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341.  18 U.S.C. § 1341 provides:

    *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for*

*obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.*

93.    Racketeer Defendants knowingly used the mail with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

94.    Racketeer Defendants' use of the postal service was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiffs and class members, and their insurance carriers.

95.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from State and federal tax authorities.

96.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from Plaintiffs and class members by not paying them their proper wages when due.

97.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their workers' compensation insurance companies.

98.    In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants also sent correspondence and other documents that were sent or delivered by the Postal Service.

99.    Each of the specific instances of the use of mail fraud to further schemes can be reasonably identified through the discovery process as the information is in the possession or control of the Defendants and/or their agents.

### *Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343*

100.    The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting wire fraud.

101.    Defendants further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343.  18 U.S.C. § 1343 provides:

> *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.*

102.    Racketeer Defendants knowingly used the interstate wire communication with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

103.    Racketeer Defendants' use of wire communication was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiffs and Class Members, and their insurance carriers.

104.    Racketeer Defendants transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

105.    Racketeer Defendants intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies in order to defraud Plaintiffs and Class Members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

1067.   In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants sent correspondence and other documents that were sent or delivered using interstate wire communications.

107.    Each of the specific instances of the use of wire fraud to further schemes can be reasonably identified through the discovery process as the information is in the possession or control of the Defendants and/or their agents.

## PATTERN OF RACKETEERING ACTIVITY

108.    The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5). As described above, Racketeer Defendants repeatedly committed the predicate acts over a period of several years.  In addition, Racketeer Defendants repeatedly engaged in unlawful acts to further their criminal scheme upon the Plaintiffs and Class Members.

109.    Racketeer Defendants willingly, and with full knowledge of their actions and the natural and obvious consequences of those actions, conspired with each other to further the schemes of the Enterprise to assist each other in committing a pattern of racketeering activity.

110.    The predicate acts of criminal racketeering activity described above were related in at least the following ways:

> (a)    They had common participants;

> (b)    They each had the same victims, namely the Plaintiffs and Class Members, as well as the government tax entities and insurance companies;

> (c)    They each had the same purpose of defrauding government entities, their employees and their insurance carriers for the benefit of the Racketeer Defendants and at the expense of Plaintiffs and class members;

> (d)    They each accomplished this purpose through the deliberate misclassification of employees as independent contractors;

> (e)    They were interrelated in that without the acts of mail fraud and wire fraud, the Racketeer Defendants would not have been able to exploit Plaintiffs and Class Members and deprive them of their rights and property.

111.    Such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise(s) described above for at least ten years and continue to the present day.

112.    Throughout the relevant time period, each Racketeer Defendant was a culpable "person" as defined by RICO, 18 U.S.C. § 1961(3).

## **GENERAL CLASS ALLEGATIONS**

113.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of all similarly situated current and former employees of Racketeer Defendants who are or were employed at any time in the last four years. Plaintiffs propose the following class definition:

> ***All current and former deliverymen or deliverywomen employed by NEHDS Logistics, Inc. and/or ABC Corps. and/or JANE and JOHN DOES.***

> Plaintiffs reserve the right to amend the putative class definition if necessary.

114.    Plaintiffs share the same interests as the putative class and will be entitled under the RICO Act to treble damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative class.

115.    The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds (or potentially even thousands of workers due to the high rate of turnover that is common in the industry). The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

116.    The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class. Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

(a)    Whether Defendants engaged in a policy of intentionally misclassifying employees as independent contractors;

(b)    Whether the Defendants engaged in a scheme to illegally and unfairly shift the employer's share of the Medicare and Social Security tax contribution onto the Plaintiffs and Class Members by intentionally misclassifying them as independent contractors;

(c)    Whether the Defendants engaged in a scheme to defraud State and federal tax authorities;

(d)    Whether Defendants engaged in a scheme to defraud the Class Members of their wages;

(e)    Whether Defendants engaged in a scheme to defraud their workers' compensation insurance carrier;

(f)    Whether the Defendants engaged in mail fraud;

(g)    Whether the Defendants engaged in wire fraud;

(h)    Whether the Class was harmed by the various schemes to defraud;

(i)    Whether the Defendants violated the RICO Act;

(j)    Whether the Defendants should be required to compensate the Class with treble damages, attorneys' fees, and costs for violating the RICO Act.

117.    The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all:

(a)     Employed by Defendants;

(b)     Misclassified as independent contractors;

(c)     Not paid overtime; and

(d)     Did not have the proper withholdings deducted from their pay nor properly reported as required by law.

118.    The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have both successfully prosecuted and defended class actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

119.    The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

120.    The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The damages sustained by individual class members are modest compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate the possibility of inconsistent judgments.

121.    The Class Members have been equally affected by Defendants' various schemes to improperly shift a 7.65% tax burden upon them by misclassifying them as independent contractors.  Moreover, Class Members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

122.    Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

123.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

124.    The Class Representatives intends to send notice to all members of the Class to the extent required by Rule 23.

## UNEMPLOYMENT CLASS ALLEGATIONS

125.    Plaintiffs sue on their own behalves and as the class representatives (hereinafter referred to as the "Unemployment Class Representatives") and bring **COUNT III** on their own behalves and as a class action, on behalf of those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b). The "Unemployment Class" is defined as:

> ***All current and former deliverymen or deliverywomen employed by NEHDS Logistics, Inc. and/or ABC Corps. and/or JANE and JOHN DOES who at some point during their employment with Defendants and/or following separation from employment with Defendants would have been eligible to file a claim for unemployment insurance benefits had the Defendants properly classified them as employees.***

Plaintiffs reserve the right to amend the putative class definition if necessary.

126.    Plaintiffs share the same interests as the putative Unemployment Class and will be entitled under the RICO Act to treble damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative Unemployment Class.

127.    The putative Unemployment Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds (or potentially even thousands of workers due to the high rate of turnover that is common in the industry).  The Unemployment Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.  The precise number of Unemployment Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Unemployment Class members.

128.    The putative Unemployment Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Unemployment Class. Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

  (a)    whether Defendants failed to report Plaintiffs and Unemployment Class Members as employees to the appropriate government authorities;

  (b)    whether Defendants failed to pay the appropriate unemployment taxes so that unemployment insurance benefits would be available to the Plaintiffs and Unemployment Class Members in the event they became lawfully eligible for said benefits;

  (c)    whether Plaintiffs and Unemployment Class Members were wrongfully denied unemployment insurance benefits that they should have lawfully been entitled to as Defendants' employees;

     (d)     whether Plaintiffs and Unemployment Class Members were misled and/or intimidated by Defendants about their rights to file a claim for unemployment insurance compensation benefits.

129.    The putative Unemployment Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all:

     (a)     Employed by Defendants;

     (b)     Misclassified as independent contractors;

     (c)     Not properly reported as employees;

     (d)     Did not have their wages properly reported as wages so that benefits would be available to them at times upon interruption of and/or separation from employment;

     (d)     Not paid lawfully owed unemployment compensation benefits.

130.    The putative Unemployment Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Unemployment Class members, and because Plaintiffs' attorneys have both successfully prosecuted and defended class actions, and will adequately represent the interests of Plaintiffs and the putative Unemployment Class members.

131.    The putative Unemployment Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Unemployment Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

132.    The putative Unemployment Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The damages sustained by individual class members are modest compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate the possibility of inconsistent judgments.

133.    The Unemployment Class Members have been equally affected by Defendants' various schemes to defraud them of lawfully owed unemployment compensation benefits by misclassifying them as independent contractors. Moreover, some Unemployment Class Members (who were not able to avail themselves of unemployment compensation benefits in the past) but are still presently employed by Defendants may be reluctant to raise their individual claims for fear of retaliation,

134.    Given the material similarity of the Unemployment Class members' claims, even if each Unemployment Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Unemployment Class's claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

135.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

136.    The Unemployment Class Representatives intend to send notice to all members of the Unemployment Class to the extent required by Rule 23.

## COUNT I
## Violation of Racketeer Influenced and Corrupt
## Organizations Act, 18 U.S.C. § 1961 *et seq.*

## PLAINTIFFS' LOSSES CAUSED BY MAIL AND WIRE FRAUD
## OF FEDERAL GOVERNMENT

137.    Plaintiffs reallege and incorporate herein all previous paragraphs.

138.    Defendant NEHDS Logistics, Inc. is a business entity that was and/or is part of the association-in-fact Enterprise as outlined above and whose activities affect interstate commerce.

139.    Defendants ABC CORPS. and/or JANE and JOHN DOES are business entities that were or are associated with the Enterprise whose activities affect interstate commerce.

140.    Racketeer Defendants associated with the Enterprise as outlined above that was engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

141.    Racketeer Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the Class Members, and the IRS out of properly owed tax revenue.  Specifically, any and all instances where Racketeer Defendants communicated with the IRS and:

      (a)    represented incorrect wages due to the fraudulent, intentional misclassification of employees as independent contractors;

(b)      represented incorrect tax withholdings due to the fraudulent, intentional misclassification of employees as independent contractors.

142.    As a direct, intended, and foreseeable result of the Racketeer Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money and exposure to additional tax liability, along with fines and interest.

143.    The criminal acts of mail fraud and wire fraud committed by Racketeer Defendants was directly related to and were substantial factors in causing injury to Plaintiffs and Class Members.

144.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money, in one or more of the following ways:

(a)      in that the Plaintiffs and the Class Members intentionally misclassified as ("self-employed") independent contractors were and/or are wrongfully subjected to a tax liability of an additional 7.65% for Social Security and Medicare contributions that should have been paid by the Racketeer Defendant-Employers;

(b)      in that by misclassifying the Plaintiffs and Class Members as independent contractors and failing to pay them overtime, the Racketeer Defendants also subjected them to an additional 7.65% tax liability on all unpaid but rightfully owed overtime wages;

(c)      in that by misclassifying the Plaintiffs and Class Members as independent contractors and failing to pay them overtime, the Racketeer Defendants lessened Plaintiffs and Class Members' future social security benefits.

145.    The acts of mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

146.    Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

147.    Plaintiffs are entitled to relief, including treble damages and attorneys' fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT II
### Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*

### PLAINTIFFS' LOSSES CAUSED BY MAIL AND WIRE FRAUD OF STATE GOVERNMENT

148.    Plaintiffs reallege and incorporate herein all previous paragraphs.

149.    Defendant NEHDS Logistics, Inc. is a business entity that was and/or is part of the association-in-fact Enterprise as outlined above and whose activities affect interstate commerce.

150.    Defendants ABC CORPS. and/or JANE and JOHN DOES are business entities that were or are associated with the Enterprise whose activities affect interstate commerce.

151.    Racketeer Defendants associated with the Enterprise as outlined above that was engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

152.    Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the Class Members, and the Connecticut Department of Revenue Services and/or the Connecticut Department of Labor.  Specifically, any and all instances where Racketeer Defendants communicated with the Connecticut Department of Revenue Services and/or the Connecticut Department of Labor and:

   (a)    represented incorrect wages due to the fraudulent, intentional misclassification of employees as independent contractors;

   (b)    represented incorrect tax withholdings due to the fraudulent, intentional misclassification of employees as independent contractors.

153.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money.

154.    The criminal acts of mail fraud and wire fraud committed by Racketeer Defendants was directly related to and were substantial factors in causing injury to Plaintiffs and Class Members.

155.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and Class members have suffered injury to their property, including the loss of money, in one or more of the following ways:

   (a)    in that the Plaintiffs and the Class Members intentionally misclassified as ("self-employed") independent contractors were and/or are wrongfully subjected to a tax liability of an additional 7.65% for Social Security and Medicare contributions that should have been paid by the Racketeer Defendant-Employers;

   (b)    in that by misclassifying the Plaintiffs and Class Members as independent contractors and failing to pay them overtime, the Racketeer Defendants also subjected them to an additional 7.65% tax liability on all unpaid but rightfully owed overtime wages;

(c)    in that by misclassifying the Plaintiffs and Class Members as independent contractors and failing to pay them overtime, the Racketeer Defendants lessened Plaintiffs and Class Members' future social security benefits.

156.    The acts of mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

157.    Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

158.    Plaintiffs are entitled to relief, including treble damages and attorneys' fees pursuant to RICO, 18 U.S.C. §1964(c).

### COUNT III
### Violation of Racketeer Influenced and Corrupt
### Organizations Act. 18 U.S.C. § 1961 *et seq.*

### PLAINTIFFS' LOSSES OF UNEMPLOYMENT COMPENSATION
### INSURANCE BENEFITS CAUSED BY MAIL AND WIRE FRAUD
### OF STATE AND FEDERAL GOVERNMENT

159.    Plaintiffs reallege and incorporate herein all previous paragraphs.

160.    Defendant NEHDS Logistics, Inc. is a business entity that was and/or is part of the association-in-fact Enterprise as outlined above and whose activities affect interstate commerce.

161.    Defendants ABC CORPS. and/or JANE and JOHN DOES are business entities that were or are associated with the Enterprise whose activities affect interstate commerce.

162.    Racketeer Defendants associated with the Enterprise as outlined above that was engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

163.    Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the Unemployment Class Members, the Connecticut Department of Revenue Services, the Connecticut Department of Labor, and/or the IRS.  Specifically, any and all instances where Racketeer Defendants communicated with the IRS, the Connecticut Department of Revenue Services, the Connecticut Department of Labor and:

(a)    represented incorrect wages due to the fraudulent, intentional misclassification of employees as independent contractors;

(b)     represented incorrect tax withholdings due to the fraudulent, intentional misclassification of employees as independent contractors.

164.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money.

165.    The criminal acts of mail fraud and wire fraud committed by Racketeer Defendants was directly related to and were substantial factors in causing injury to Plaintiffs and Unemployment Class Members.

166.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiffs and Unemployment Class members have suffered injury to their property, including the loss of money, in one or more of the following ways:

(a)     in that in that the Plaintiffs and the Unemployment Class Members intentionally misclassified by Defendants as ("self-employed") independent contractors were not able to collect unemployment compensation insurance benefits to which they should have been entitled because there were no reported wages in their "base period" and/or "alternative base period" as defined by § 31-230 of the Connecticut General Statutes;

(b)     in that Defendants' failure to pay lawfully owed minimum wage and/or overtime compensation wrongfully reduced Plaintiffs and Unemployment Class Members' unemployment benefit rate calculated pursuant to §§ 31-228, 31-229, and 31-231a of the Connecticut General Statutes, and any damages owed to the Plaintiffs and Unemployment Class Members should be calculated based on an unemployment benefit rate reflecting all wages lawfully owed to them, including wrongfully withheld overtime pay that would have increased the reported wages in Plaintiffs and Class Members' respective base periods.

167.    The acts of mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

168.    Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

169.    Plaintiffs are entitled to relief, including treble damages and attorneys' fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT IV
## Violation of Racketeer Influenced and Corrupt
## Organizations Act. 18 U.S.C. § 1961 *et seq.*

## CONSPIRACY TO VIOLATE RICO

170.    Plaintiffs reallege and incorporate herein all previous paragraphs.

171.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud Plaintiffs and Class Members.

172.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud Plaintiffs and Unemployment Class Members.

173.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud the tax authorities.

174.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud their workers' compensation insurance carriers.

175.    Defendant NEHDS willfully, intentionally, and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendants ABC CORPS., and/or JANE and JOHN DOES, to further the criminal scheme to defraud the Plaintiffs and the Class Members.

176.    Defendant NEHDS willfully, intentionally, and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendants ABC CORPS., and/or JANE and JOHN DOES, to further the criminal scheme to defraud the Plaintiffs and the Unemployment Class Members

177.    Defendant NEHDS willfully, intentionally, and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendants ABC CORPS., and/or JANE and JOHN DOES, to further the criminal scheme to defraud the tax authorities.

178.    Defendant NEHDS willfully, intentionally, and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendants ABC CORPS., and/or JANE and JOHN DOES, to further the criminal scheme to defraud their workers' compensation insurance carrier(s).

179.    Defendants have directly and indirectly participated in the conduct that furthered the schemes of the Enterprise affairs through the pattern of racketeering activity above, in violation of 18 U.S.C. § 1962(d).

180.    Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

181.    Plaintiffs are entitled to relief, including treble damages and attorneys' fees pursuant to RICO, 18 U.S.C. §1964(c).


### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request the following relief:

A.    Certifying this action as a class action pursuant to Rule 23(b)(3);

B.    Designating Plaintiffs as the representatives of the proposed Rule 23 Class;

C.    Appointing Grady & Riley, LLP as Class Counsel;

D.    Equitable Tolling of the Statute of Limitations;

E.    Granting Judgment in favor of Plaintiffs against Defendants and awarding Plaintiffs and Class Members treble compensatory damages for Defendants' violation of RICO;

F.    Awarding Plaintiffs prejudgment and post-judgment interest;

G.    Award Plaintiffs' costs, and reasonable attorneys' fees; and

H.    Grant such other and further relief as the Court may deem just or equitable.

## **JURY DEMAND**

      NOW COME the Plaintiffs, by and through their attorneys, and hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 29, 2020                                        Respectfully Submitted,


                                                */s/ Donald Jeremiah Trella*
                                                Robert C. Lubus, Jr. (ct03660)
                                                Donald Jeremiah Trella (ct30823)
                                                Attorneys for Plaintiffs
                                                Grady & Riley, LLP